Good morning. And please, the Court, Tim Wilborn again for Appellant Jennifer Nerman. You may get a record, by the way, in terms of the numbers of arguments in one day, especially those of the two of you. Thank you. I am developing a fine appreciation for how difficult it must be to be an appellate judge and keep all these cases straight in your head. This case, basically, two issues in this case, whether the rejection of the claimant's testimony was proper and the rejection of the lay witnesses. Now, the quick and easy thing to do here is to go right back to this Bruce case on the issue of the lay witness testimony. Let's start with the quick and easy. We don't care about quick and easy. I care about quick and easy, Your Honor. I notice you tell us that each time, quick and easy. Good morning. Opposing counsel has also in this case submitted a supplemental citation to Bruce, and I believe that I win or I could win based on application of Bruce to the facts of this case. If we look at my reply brief at pages 10 to 12, it goes here. What has been done is the testimony has been rejected solely on the basis that the degree of symptomatology is not supported by objective factors. And the Bruce case made it very clear that that is not a proper basis upon which to reject. Well, that's testimony. Where is the comment on the testimony in the ALJ opinion here? In the ALJ opinion? Page 23. The ALJ. I'm looking at page 23 of my brief. ALJ rejects the lay witness testimony because it could be difficult to attribute that degree of limitation to the medical condition as opposed to other reasons, and that is citing excerpts 23, which also appears at excerpts A17 in a small volume. Now, the difficulty, as the Bruce case recognized, is that this is canned language. The Social Security Administration uses this thing they call the FIT template. I'm looking at page 23 of my brief. I'm looking at page 23 of my brief. Is this where the language ñ what I see him saying is she makes personal reports. A friend of the claimant also noted that the claimant had very limited daily activities. Then he says he rejects it because allegedly limited daily activities cannot be objectively verified, even if they were limited, it's difficult to attribute that degree of limitation to the medical condition, and that's about it. That's what he says. Is that what I'm looking at? Okay. That's true of any case. I mean, if this Court accepts that rationale as sufficient to reject lay testimony, you'll never have to hear another lay witness testimony case again, because that language That might be the quick and easy way to ñ That's called, Your Honor, docket control, but I'm not advocating it. But I submit that you could put that language in any ALJ decision, and if the Court accepts that, then you have held it as a proper ñ and in fact, it is canned language. It's in a template. But neither of those reasons is really the Bruce reason. It's a different reason. Two different reasons. And you're saying the first one, I gather, the one that says allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty is always true. That's always true. And the second one, however, doesn't seem to me to be the same as the Bruce theory. Well ñ Because he's not really discrediting them. He's just saying that crediting them, I can't tell that this is connected to the medical reasons. That will always be true. Now, what would be interesting here is if the ALJ had actually cited medical evidence which proved that the behavior of the claimant, in fact, was not tied to the medical condition. But he didn't do that here. The ALJ didn't do that here. And the bald assertion or the bare assertion that, oh, we don't know whether she's this limited because she's just choosing to be versus whether it's related to her medical condition, that would apply, I submit, to any case. An ALJ can always say that. Let me tell you what the problem I have with the case. The ALJ's findings refer to at least three sets of medical records that have statements clearly contrary to your client's testimony and contrary to the testimony to the statement provided by Mr. Gilbert. Why isn't that a solid basis for us to affirm? I'm referring to ER Volume 1A, 16 and 17, Volume 2, 168, 193, 195, 240, and 258. Why isn't that enough? Because, Your Honor, the medical records that you just cited to, if I'm correctly identifying them in my mind, those are the ones that were based purely on the objective medical findings. And this circuit's excess pain, excess symptom law, dating back into the 1980s at least, has held that you can't reject a claimant's testimony solely on the basis that it's not fully, that the degree of symptom is not fully supported by objective medical findings. And I think that's what happened here. That's not my question, though. My question was that there was ample evidence from the medical records to refute the testimony of your client. Well, here's, I think I can, I have this boldface. It's probably the main issue in this case, I say. The consultative examiner, Dr. Bucktel, assessed a non-disabling degree of limitation based solely on objective factors. So I speculated last night in the wee hours of the morning that the burning question in the mind of this court would be, can the ALJ rely on that as a proxy to reject the claimant when the case law is clear that the ALJ could not himself do exactly what Dr. Bucktel is doing, i.e., reject the degree of limitation solely on the basis that the degree of pain isn't fully supported by the objective evidence? Is that the root of your inquiry? Well, not exactly, because I'm looking at the evidence in the standard of review. It seemed to me there was substantial evidence to support the ALJ in this particular case, regardless of whether or not it conflicts with my testimony, regardless of the testimony of others. I have, I think, the response to your question, Your Honor. Thank you. The legal standard is twofold, substantial evidence and legal error. I'm not arguing that there's not substantial evidence. You're arguing legal error. I'm arguing there's legal error. Two opposite ends of the scale. Okay. Because? And legal error occurs when an ALJ rejects a claimant's testimony solely on the basis that it's not fully supported by the objective evidence. Now, I will concede here that, as this little paragraph I just read, this case is a little bit complicated by the fact that there was a doctor in this record, Dr. Bucktel, the consultative examiner who saw this woman for, I think, 25 minutes or something. He based his opinion solely on the objective evidence. And he said, well, I don't think she's disabled. So what would we do? Let's assume we decided, all right, you made a point. What do we do? We remand it. That's correct. And if we remand it, what's the probability? The probability that the findings are going to be the same? I don't think so, Your Honor, because, well, I'm not sure that we're going to have Let's just say that it matters a lot which ALJ our case gets assigned to. Well, I'm not suggesting that. But what I am suggesting is the facts aren't going to change when we remand it. No, they won't. She that does, she that has the activity that is attributed to her, or she doesn't. And this case, I gather, as I'm looking at it, the basis of denying her relief was we look at what she's doing, what she's capable of doing, and we listen to what she says, and we can't make them match. I think we can make them match. I'm not saying we can't. I'm saying that's the reality. I think a reasonable ALJ could find this claimant disabled. And, in fact, I believe most ALJs would find this claimant disabled. This particular ALJ did not. But I think on remand, the result would be different. Thank you very much. Counsel. Good morning, Your Honor. Stephanie Benignan representing the Commissioner. First of all, before I start into substantive argument, I want to note my apology to the Court, Ms. Nerman and Mr. Welborn. As he points out in his reply brief at page 12, I mistakenly stated that he did not raise the issue of crediting the lay witness testimony and paying on that basis. And in that regard, he notes the places in his opening brief in the district court and where he made those assertions. So I apologize to the Court, Ms. Nerman, Mr. Welborn, for not noting this in my brief. It was an unintentional mistake. And I'm sorry, I didn't catch on to that. Yeah. When the ALJ says that he's rejecting it because it can't be objectively verified, that's always true, right? I mean, whenever you have either the point of having the witness testify about her own circumstances or the her friends and relations testify, is that they are another pair of eyes and there's no way to know if what they're telling was true other than ordinary credibility determinations, I mean, more than in any court case. So what does that mean? Okay, Your Honor. I agree that's always true, but I still don't – but it still is a relevant or germane reason because I think what the ALJ is simply doing there is recognizing that lay witness testimony is very subjective and It's not subjective. It's subjective. It just has to be evaluated. I mean, if somebody says I've seen this person, you know, an X number of times a day and this is what I see, that's not subjective. It just has to – it just is like any other testimony in a court or administrative hearing, something that has to be evaluated by credibility determinations, but it's not subjective. Well, I agree, Your Honor. I think we're saying the same thing. It's not – it's not subjective. It's what the person's reporting. What I mean by subjective is it's just their own observations, and I think what the ALJ is doing there is he's just making a distinction. But if he says I'm not going to listen to it because it can't be verified, he's just – he's saying I'm simply not going to take that – I'm not going to credit any lay testimony, and that is contrary to the rules that govern here. Well, unlike Bruce here, Your Honor, I don't think he qualified that to mean objectively verified. Please pull the microphone down. I don't think he – he didn't qualify the term objectively verified to mean objective verification by the medical evidence. So I think that – Well, I agree that's not the Bruce statement, but it's another statement, a different way of saying that I'm never going to give any way to lay testimony. Okay. Well, Your Honor, to the extent that that court finds that that's error, which I don't think it should, but to the extent that it does, I think it's – But why not? Well, because he didn't tie that to – he didn't tie that to the impermissible reason, which is objective verification by medical evidence. Here. This is a different inadequate reason, because it is an absolutely universally applicable reason, and it is tantamount to saying I am simply given no way to lay testimony in general. Okay. Well, I understand your point, Your Honor, but even if it's harmful error, the ALJ went on and he gave a second reason. And the second – the second reason was that even if the daily activities were as limited as alleged, so assuming that, it was still difficult to attribute that degree of limitation to a medical condition as opposed to other reasons. And the other reasons the ALJ gave, and this applied to the lay witness too, and the Commissioner notes these other reasons at pages 29 through 30 of his brief, is that besides the relatively medical – relatively mild medical evidence, the other factors were Dr. Bachtel's assessment that Ms. Nerman could perform light work, the circumstances of her attendance in physical therapy, the fact that she had requested a letter that she was disabled from Dr. Loeb, that Dr. Loeb's examination – Well, tell me about that letter. What is wrong with her requesting a letter? Okay. That was the catch-22 situation. And so the ALJ's point in that regard was discussed at page 21 through 22 of the Commissioner's brief. And the ALJ's point there was that she had requested a letter stating that she was disabled, but in contrast to that, she had a grossly normal examination throughout, and so the ALJ concluded that that was not consistent with significant limitations. Well, my question was, what is wrong with her requesting a letter? The ALJ did not assert there was anything wrong with her requesting the letter. It claims it's free to request evidence. The ALJ's point was that this request that the letter state that she was disabled was not in fact supported by her examination findings. So that was the ALJ's point, Your Honor. He wasn't taking issue with the fact that she requested the letter. And that he didn't consider as part of his feeling that she was not credible? Right. That further supported that her allegations of disability were not credible because the... Not because she requested the letter, but because after the letter was requested, it didn't support her claim? Exactly right, Your Honor. That's exactly right. Well, she didn't get the letter, did she? No, she didn't. I believe that the doctor said that she needed a more thorough examination before she'd be willing to say that she was disabled. And I guess... So the doctor didn't say she was not disabled or that she was disabled or not disabled. She just needed a more thorough examination? Right. And I think that's consistent with the ALJ's reasoning saying that, you know, you're requesting a letter of disability, but, you know, the examination findings aren't supporting that and, you know, your own doctor... And then the doctor, I believe, in that record said, look, you need a more thorough examination. Did she ever go back to that doctor for the further examination? That I can't say, Your Honor. I don't have a ready cite to the record for that. I see. I would just like briefly to address Mr. Wilborn's argument about, you know, Dr. Bachtel serving as a proxy to do what the ALJ can't do because it was based solely on objective findings and an ALJ cannot rely solely on objective findings to reject a claim's credibility. That's absolutely true. An ALJ can't use that as the sole factor. But here the ALJ didn't rely, didn't err because he didn't rely solely on Dr. Bachtel's assessment. He used other factors that were noted on page 28 and 29 of the Commissioner's Brief. And furthermore, I would point this Court to the Batson v. Commissioner case. And the Ninth Circuit itself there relied upon a lack of objective medical evidence, but it also relied upon a doctor's opinion, even though that was rendered on an objective basis, that a claimant's ability was not, ability to work was not limited. And the Court found that those two facts along with other reasons were sufficient. So in that case, the Commissioner submits that there the Ninth Circuit seemed to be separately, you know, considering those factors. So not only the objective, lack of objective medical evidence, but the opinion evidence from a doctor even though it was based on an objective basis and finding that the doctor's opinion itself a separate factor for rejecting the claimant's complaints. Thank you. Thank you. Counsel, you have a minute in rebuttal. Let me tell you my quick sense of this case, which is the medical evidence is pretty thin. Comparatively. I wouldn't characterize it that way, Your Honor. I think the most critical medical finding, bear in mind that one of the more debilitating impairments in this case is chronic pain, migraines, back pain. She has a C6 nerve root problem, which is documented. I was just looking at it, transcript 240, I believe. And although there's not frank impingement of the nerve root, it's dented by, you know, there's something touching it, which could be causing these symptoms. People respond differently to the way their back pain. Actually, even a basis of disability that she claimed. She mentions them at her hearing and she mentions them occasionally, but there doesn't seem to be any medical evidence about the migraines. Or even a claim that that was the basis for her disability, is there? You know, I can't answer that question. I don't have that note right here. I know that the primary basis for her disability was chronic pain and that she does have hard objective findings, which could account for the back pain. Okay. Thank you very much, counsel. Thanks to both counsel. The case of Nerman v. Astro is submitted, and we'll go on to Bakewell v. Astro. I think we'll take a short break after this next case, so just for scheduling purposes. Thank you. Good morning again.
judges: Farris, Nelson D. W., Berzon